# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| SHANNON LEWIS | * | CIVIL ACTION NO.  14-3368 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| JASON HANEMANN, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, is a hybrid motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(1) & (6) [doc. # 34] filed by defendants, Jason Hanemann and the State of Louisiana (named in the complaint as "Louisiana DMV").  For reasons assigned below, it is recommended that the motion be GRANTED, and that the complaint be dismissed, in its entirety.

## Background

On December 3, 2014, Shannon Lewis, acting pro se, filed the instant suit denominated as "Complaint for Violation of Rights Pursuant to 18 U.S.C. § 241; § 242" against Louisiana State Police Trooper Jason Hanemann; the State of Louisiana (named as "Louisiana DMV"); and Justice Wrecker.  (Complaint).  According to Lewis, his various rights were violated on November 4, 2014, when Trooper Hanemann stopped Lewis's vehicle for driving without a license plate.  *Id.*  In response to questioning, Lewis admitted to Hanemann that he did not have a driver's license or insurance.  *Id.*  Lewis instead offered Hanemann a notarized identification and

copies of court cases on insurance.  *Id*.  After a 40-50 minute delay, Hanemann issued Lewis summonses on charges for failure to have a license plate and a driver's license.  *Id*.  He also called Justice Wrecker to tow Lewis's vehicle.  *Id*.

Lewis asserts claims under 42 U.S.C. §§ 1983 & 1986, 18 U.S.C. §§ 241 & 242, and 31 U.S.C. § 3729 for violations of his rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, and for violations of his natural rights secured by the creator YAHWAH.  (Compl.).  He seeks compensatory damages and the return of his automobile.  *Id*.

The court stayed this matter on March 9, 2015, pending resolution of the underlying state court criminal proceedings.  (March 9, 2015, Order [doc. # 17]).  On May 6, 2015, Lewis was tried and convicted in the 4th Judicial District Court for the Parish of Ouachita, State of Louisiana on charges of having no license plate and no driver's license in his possession.  *See* Unverified Minutes, *Louisiana v. Lewis*, Case # 14-T-0253528 (May 6, 2015, 4th JDC); Defs. Joint Status Report, Exh. [doc. # 30].  The court sentenced Lewis to pay a fine of $150.00 and court costs, or otherwise 29 days in jail, per count.  *Id*.  However, the court suspended the fine and costs as to the second count.  *Id*.

Following the convictions, the court lifted the stay in this matter.  (May 26, 2015, Order [doc. # 31]).  On June 4, 2015, defendants, Jason Hanemann and the State of Louisiana, filed the instant motion to dismiss plaintiff's claims on the bases of Eleventh Amendment immunity, qualified immunity, and because the claims are barred by *Heck v. Humphrey*.  Lewis filed his response to the motion on July 1, 2015.  (Response [doc. # 36]).  Defendants did not file a reply, and the time to do so has lapsed.  (Notice of Motion Setting [doc. # 35]).  Accordingly, the matter is ripe.

2

## Discussion

I.     **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

a)     Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)).  The party seeking to invoke jurisdiction bears the burden of demonstrating its existence.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court."  *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted).

"Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms: 'facial attacks' and 'factual attacks.'"  *Garcia v. Copenhaver, Bell & Assics., M.D.'s, P.A.*, 104 F.3d 1256, 1260-1 (11th Cir. 1997) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-9 (11th Cir. 1990); *see Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).  Facial attacks on the complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for purposes of the motion."  *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

b)     Eleventh Amendment Immunity

A party's invocation of Eleventh Amendment immunity is analyzed as a challenge to the federal court's exercise of federal subject matter jurisdiction.  *Mahogany v. Louisiana State Supreme Court*, 262 Fed. Appx. 636 (5th Cir. Jan. 25, 2008) (citations omitted).  It is well settled

that

> [t]he Eleventh Amendment to the United States Constitution bars suits in federal court by citizens of a state against their own state or a state agency or department. Claims under federal statutes do not override the Eleventh Amendment bar unless there is a clear showing of congressional intent to abrogate the bar. Section 1983 does not override the Eleventh Amendment bar.

*Darlak v. Bobear*,  814 F.2d 1055, 1059 (5th Cir. 1987) (citation omitted).

Louisiana has refused to waive its 11th Amendment immunity from suit in federal court. La. R.S. 13:5106; *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991). Indeed, the state specifically invoked immunity via the instant motion.  Moreover, the Louisiana Department of Public Safety and Corrections[1] is an arm of the state, and therefore eligible for Eleventh Amendment protection.  *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313 (5th Cir. 1999).

Insofar as plaintiff sued Trooper Hanemann in his official capacity, it is manifest that official capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985) (citing, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55 (1978)).  Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id*.[2]  Nevertheless, the *Ex parte Young* doctrine[3] recognizes an exception to Eleventh Amendment immunity for claims of prospective injunctive

---

[1]  The Office of Motor Vehicles is a division within the Department of Public Safety and Corrections.  La. R. S. § 36:401.

[2]  The Eleventh Amendment bars suit against state officials and employees of state entities, acting in their official capacities.  *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citations omitted).

[3]  *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908).

or declaratory relief against a state official.  In other words, "prospective injunctive or declaratory relief against a state [official] is permitted . . . but retrospective relief in the form of a money judgment in compensation for past wrongs ... is barred." *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008) (citation omitted).

Here, although plaintiff's claim for compensatory damages against the State and Trooper Hanemann, in his official capacity, is barred by the Eleventh Amendment, plaintiff also seeks return of his car, i.e. prospective, injunctive relief.  However, to obtain declaratory and injunctive relief under the *Ex Parte Young* exception, a plaintiff must establish standing by showing:  1) injury in fact; 2) causation; and 3) redressability.  *Tyson v. Tanner*, Civ. Action No. 08-4445, 2010 WL 2216507 (E.D. La. May 7, 2010) (R&R), *adopted* 2010 WL 2218628 (E.D. La. May 27, 2010) (citing *Gregory v. Texas Youth Comm'n*, 111 F. App'x 719, 721 (5th Cir. 2004)).  Thus, if the state official does not have authority at the time of suit to redress the plaintiff's complaints, then the exception is inapplicable.  *Id*.

In this case, the court is not persuaded that Trooper Hanemann is the proper state official with authority to secure the release of plaintiff's vehicle.[4]  Nevertheless, even if Hanemann *were* the proper official, plaintiff's complaint also fails to state a viable claim for injunctive relief.  *See* discussion, *infra*.

---

[4]  When, as here, a challenge is made to the propriety of the court's exercise of jurisdiction, the burden rests upon the party asserting jurisdiction in the federal court to plead facts establishing  jurisdiction and to establish that jurisdiction is proper under the law. *Applewhite v. Metro Aviation, Inc.*, 875 F.2d 491, 494 (5th Cir. 1989) (citation omitted).

**II.**     **Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted**

a)     <u>Standard of Review</u>

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."  Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  *See Iqbal, supra*.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.  Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions.  *Iqbal, supra*.  A pleading comprised of  "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision."  *Gilbert v. Outback*

*Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008) (citations and internal quotation marks omitted).  Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory.  Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument."  *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011).[5]

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).  However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (court may take judicial notice of matters of public record).

b)  <u>Federal Crimes and the False Claims Act</u>

Lewis asserts claims for relief under 18 U.S.C. §§ 241 & 242 and the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq*.  Sections 241 & 242 criminalize the deprivation of (and the conspiracy to deprive) certain constitutional and civil rights.  Private citizens, however, do not have a right to compel criminal prosecution; rather, the decision whether to file criminal charges lies within the *discretion* of the prosecutor.  *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) (citations omitted).  Thus, to initiate federal criminal charges, Lewis will need to bring his evidence to the United States Attorney for the Western District of Louisiana for her consideration.  *See Williams v. U.S. Gov't*, Civ. Action No. 13-0802, 2014 WL 3191886, at *4

---

[5]  "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used."  *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).

(M.D. La. July 8, 2014).

Perhaps in an attempt to circumvent the bar against private citizens initiating criminal prosecutions, plaintiff also invokes the FCA, which authorizes individuals to bring civil actions on behalf of the United States Government "to recover for false claims made by the defendants to secure payment by the [United States] Government." *U.S. ex rel. Shupe v. Cisco Sys., Inc.*, 759 F.3d 379, 383 (5th Cir. 2014) (citation omitted) and 31 U.S.C. § 3730.  To state a claim under the FCA, "a plaintiff must allege:  (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that is presented to the [United States] Government." *Shupe, supra* (citation omitted).  Plaintiff's complaint, however, does not contain any of the foregoing requisites, and therefore, fails to state a claim for relief under the FCA.

c)   <u>42 U.S.C. § 1986</u>

Lewis also asserts a claim under 42 U.S.C. § 1986, which provides that "[e]very person who, having knowledge that any of the wrongs conspired to be done, **and mentioned in section 1985** . . . are about to be committed, and having power to prevent or aid ... neglects or refuses so to do ... shall be liable to the party injured." *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (citing 42 U.S.C. § 1986) (emphasis added).  Thus, for plaintiff to enjoy a viable claim under § 1986, he also must state a claim under § 1985, which prohibits, among other things, conspiracies to deprive any person equal protection of the laws.  *Lockett, supra*.

To state a claim under § 1985(3), plaintiff must allege

(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a

person or property, or a deprivation of any right or privilege of a citizen of the
United States.

*Hilliard v. Ferguson*, 30 F.3d 649, 652-653 (5th Cir. 1994).

In addition, the conspiracy must have a racially based animus.  *Lockett, supra*.  For purposes of

asserting a conspiracy claim, plaintiff must assert the "operative facts upon which the claim is

based."  *Lynch v. Cannatella*, 810 F.2d 1363, 1369-1370 (5th Cir. 1987).  Conclusory allegations

of conspiracy do not suffice.  *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004)

(discussing conspiracy under § 1983).

 Here, Lewis's complaint fails to set forth a factual basis to support a conspiracy between

the defendants, or that any defendant acted out of racial animus.  Plaintiff's inability to state a

claim under 42 U.S.C. § 1985 fatally undermines the vitality of his § 1986 claim.  *Lockett, supra*.

d) <u>42 U.S.C. § 1983</u>

 Section 1983 provides that any person who, under color of state law, deprives another of

"any rights, privileges or immunities secured by the Constitution and laws shall be liable to the

party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

*Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983).  Section

1983, however, does not create any substantive rights; it simply provides a remedy for the rights

designated therein.  *Id*.  "Thus, an underlying constitutional or statutory violation is a predicate to

liability under § 1983."  *Id*.  (citation omitted).

 "To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by

the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law."  *Leffall v. Dallas Independent School

District*, 28 F.3d 521, 525 (5th Cir. 1994).  The first inquiry is whether plaintiff has alleged a

violation of a constitutional right at all.  *Id*.  *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).

In addition, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5ᵗʰ Cir. 2009) (quoted sources omitted).  When, as here, a defendant invokes qualified immunity, the burden shifts to plaintiff to establish that the defense is inapplicable.  *Id*. (citation omitted).  Plaintiff's burden is two-pronged.  *Id*.  First, he must demonstrate that the defendant violated a constitutional right under current law.  *Id*.  "Second, he must claim that the defendant['s] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  *Id*.  (quoted source and internal quotation marks omitted).  The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  *Collier v. Montgomery*, 569 F.3d 214, 217 (5ᵗʰ Cir. 2009) (*citing Pearson v. Callahan*, 808 U.S. 2009, 129 S.Ct. 808  (2009)).

I)       *The Fourth Amendment (via the Fourteenth Amendment)*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. AMEND. IV.  The protections of the Fourth Amendment extend to the states pursuant to the Fourteenth Amendment.  *Dunaway v. New York*,  442 U.S. 200, 207, 99 S.Ct. 2248, 2253-2254 (1979) (citation omitted).  Moreover, claims of unlawful arrest, illegal search and seizure, and pretrial deprivation of liberty interests are properly analyzed under the cases interpreting the Fourth

10

Amendment.  *See Gray v. Horton*, 2008 WL 170664, *4 (W. D. La. Jan. 18, 2008) (and cases

cited therein); *Buchanek v. City of Victoria*, 2008 WL 4093623, *5 (S. D. Tex., Aug. 28, 2008)

(and cases cited therein).

"A person is seized by the police and thus entitled to challenge the government's action

under the Fourth Amendment when the officer, by means of physical force or show of authority,

terminates or restrains his freedom of movement, through means intentionally applied." *Brendlin

v. California*, 551 U.S. 249, 127 S.Ct. 2400, 2405 (2007) (citations and internal quotation marks

omitted).  A traffic stop entails a seizure for purposes of the Fourth Amendment.  *Id*.; *see also,

United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (stopping a vehicle and detaining its

occupant(s) constitutes a seizure).  Traffic stops, whether supported by probable cause or a

reasonable suspicion, are treated as *Terry* stops.  *Brigham, supra*.  (citations omitted).

Under *Terry*, a law enforcement officer may temporarily detain a person when the

"officer has a reasonable, articulable suspicion that a person has committed or is about to commit

a crime." *United States v. Chavez*, 281 F.3d 479, 485 (5th Cir. 2002) (citing *Terry v. Ohio*, 392

U.S. 1, 30, 88 S.Ct. 1868 (1968)).  Reasonable suspicion may be described as "'a particularized

and objective basis' for suspecting the person stopped of criminal activity." *Id*. (citing *Ornelas v.

United States*, 517 U.S. 690, 696, 116 S.Ct. 1657 (1996)).  To satisfy the Fourth Amendment, the

stopping officer must be able to "articulate more than an 'inchoate and unparticularized suspicion

or "hunch"' of criminal activity." *Id*. (citing *Illinois v. Wardlow*, 528 U.S. 119, 123-24, 120

S.Ct. 673 (2000)).  The Fourth Amendment requires but a "minimal level of objective

justification for making the stop," and requires "a showing considerably less than preponderance

of the evidence." *Id*. (citation omitted).  The validity of the stop is determined under "the totality

of the circumstances-the whole picture." *Id.*  (citing *United States v. Sokolow*, 490 U.S. 1, 7-8, 109 S.Ct. 1581 (1989)).

According to the complaint, Trooper Hanemann stopped Lewis because of Lewis's "personal plate."  (Compl., ¶ 8.4).  In response to questioning, Lewis admitted that he did not have a driver's license or insurance.  *Id.*, ¶ 8.5.  Trooper Hanemann issued summonses to Lewis for "[n]o plates; [n]o DL in poss.," for which Lewis conceded that he was "exercising [his] rights to have neither."  *Id.*, ¶ 8.6.

In Louisiana, a permanent, visible license plate must be attached to the rear of a motor vehicle.  La. R.S. § 32:53.  Lewis's decision not to display a license plate on his vehicle provided Trooper Hanemann with at least reasonable suspicion to stop him for the offense.  *See Smith v. City of Gretna Police Dep't*, 175 F. Supp. 2d 870, 874-75 (E.D. La. 2001).  Thereafter, Hanemann learned that plaintiff did not have a driver's license or insurance.  In Louisiana, it is unlawful to drive a vehicle without a valid driver's license.  *United States v. Kye Soo Lee*, 962 F.2d 430, 436 (5th Cir. 1992) (citing La. R.S. 32:52) (Louisiana law requires the driver of a motor vehicle to be licensed).  At that point, Hanemann could have arrested Lewis for the offense.  *See Kye Soo Lee, supra*; *State v. Sherman*, 931 So.2d 286, 291 (La. 2006); *see also, Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536 (2001) ("an officer [who] has probable cause to believe that an individual has committed even a very minor criminal offense in his presence . . . may, without violating the Fourth Amendment, arrest the offender").  Instead, he issued Lewis a summons and towed his vehicle.[6]

---

[6]  There is some case law to suggest that a mere summons does not constitute a seizure sufficient to support a § 1983 claim.  *See Gonzales v. Brazley*, 2009 WL 2411800 (E.D. La. Aug. 4, 2009) (and cases cited therein).

In his response, plaintiff seems to argue that he did not commit an offense because there was no evidence that he was engaged in interstate commerce.  Louisiana Revised Statute 32:52, however, does not require a driver to be engaged in interstate commerce before he or she is required to possess a license.[7]

Furthermore, Lewis is barred by the Supreme Court's holding in *Heck v. Humphrey* from arguing that there was no probable cause for the stop and summons:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, [footnote omitted] a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. . . . Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994).

In other words, *Heck* prohibits the use of § 1983 complaints as a means of collaterally attacking outstanding state convictions.

Here, it is uncontested that Lewis was convicted in the 4th Judicial District Court on

---

[7]  The statute provides that,
[n]o person shall drive or operate any vehicle upon any highway within this state unless and until he has been issued a license to so do as required by the laws of this state nor shall any person permit or allow any other person to drive or operate any vehicle owned or controlled by him upon highways of this state unless and until such other person has been issued a license to so do as required by the laws of this state.
La. R. S. § 32:52.

charges of failure to display a license plate and possess a driver's license.[8]  Lewis's argument that he was not violating the law implies the invalidity of his convictions.  Accordingly, under *Heck*, he is required to demonstrate that his convictions have been reversed, invalidated, or expunged before he can bring a civil action seeking money damages for unlawful seizure.  *See Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996).[9]  Plaintiff has failed to make the requisite showing; therefore, his claims are not cognizable.

Insofar as plaintiff invokes the Fourth Amendment to contest the impoundment of his vehicle, the court notes that a warrant is unnecessary to seize a vehicle when the impoundment is "carried out in furtherance of a community caretaking function."  *Franco v. Kluge*, Civ. Action No. 13-0313, 2015 WL 1637688, at *10 (W.D. Tex. Apr. 13, 2015) (citing *United States v. Castro*, 166 F.3d 728, 734 (5th Cir.1999) (en banc)).  In considering whether this exception applies, the court must consider the reasonableness of the impoundment in light of the facts and circumstances encountered by the officer.  *United States v. McKinnon*, 681 F.3d 203, 208 (5th Cir. 2012) (citation omitted).

Lewis alleges that Trooper Hanemann encountered him driving on Trenton Road with no license plate, no driver's license, and no proof of insurance.  Under Louisiana law, if an operator is unable to show proof of insurance, then the vehicle shall be impounded.  La. R.S. § 32:863.1(C)(1)(a).  Further, if Trooper Hanemann did not impound the vehicle, there was the

---

[8]  *Heck* applies even if the plaintiff is no longer in custody and/or only was subject to a fine.  *See Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000) (no longer in custody); *Gardner v. Lenoir Cnty. Sheriff's Office*, Civ. Action No. 14-0066, 2015 WL 3852956, at *5 (E.D. N.C. June 22, 2015) (and cases cited therein) (fines).

[9]  There is no indication that plaintiff seeks nominal or punitive damages.  *See Mayfield v. Texas Dept. Of Criminal Justice*,  529 F.3d 599, 605-606 (5th Cir. 2008).

14

very real danger that an unlicensed driver (Lewis) or someone else could drive the un-plated vehicle on public streets.  These public safety considerations satisfy the requirements for the community caretaker exception to the warrant requirement.  *See Halajian v. D & B Towing*, 209 Cal. App. 4th 1, 15-16, 146 Cal. Rptr. 3d 646, 656 (Cal. 5th App. Dist. 2012).

ii)       *Due Process Clause and the Takings Clause (via the Fourteenth Amendment)*

The Due Process Clause of the Fourteenth Amendment declares that no State shall "deprive any person of life, liberty, or property, without due process of law." UNITED STATES CONSTITUTION, AMENDMENT XIV.  To state a § 1983 claim for a due process violation, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citation omitted).  The court assumes for purposes of this motion that Lewis owns the vehicle in question, and therefore, that he enjoys a protectable property interest.[10]

The Supreme Court has emphasized that "[t]he touchstone of due process is protection of the individual against arbitrary action of government . . ." which includes both a substantive due process guarantee against the arbitrary and oppressive exercise of government power, and a procedural due process guarantee protecting against arbitrary takings.  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S. Ct. 1708, 1716 (1998) (citations omitted).  Substantive due process limits what the government may do in both its legislative and its executive capacities.  *Id*.

_____

[10]   While the Supreme Court has recognized a right to *interstate* travel, it has not determined whether there is a right to *intrastate* travel.  *Dickerson v. City of Gretna*, Civ. Action No. 05-6667, 2007 WL 1098787, at *3 (E.D. La. Mar. 30, 2007), amended (Apr. 11, 2007).  In the absence of a determination by a higher court that there is a right to *intrastate* travel, this court declines to recognize one.  *Id*.  Here, of course, plaintiff maintains that he was *not* engaged in interstate activities.

However, the "criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." *Id*.

Insofar as plaintiff challenges the constitutionality of the licensing and insurance requirements at play here, the court emphasizes that "[s]ubstantive due process claims involving property rights are not sustainable if there exists any conceivable rational basis for the challenged legislative decision." *Ware v. Lafayette City-Parish Consol. Gov't*, Civ. Action No. 08-0218, 2009 WL 5876275 (W.D. La. Jan. 6, 2009) (citations and internal quotation marks omitted). Thus, "governmental action implicating a protected property right comports with substantive due process if the action is rationally related to any conceivable legitimate government objective." *Id.* (citations and internal quotation marks omitted).  Moreover, "only if government action is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare, may it be declared unconstitutional." *Id*.  In short, the "court need only ask whether there was any conceivable basis for the . . . legislative judgement.  If there is a sufficient basis for that judgment, the court's inquiry ends." *Id*.

This is not the first time that a division of this court has been called on to consider the constitutionality of Louisiana's motor vehicle laws.  In *Kaltenbach v. Breaux*, the court held that

> the state's requirements that all persons who operate motor vehicles on state highways possess a valid driver's license, safety inspection tag, and vehicle registration are valid exercises of the state's police power. The regulations are rationally related to the state's purpose in safeguarding the health and safety of its citizens, and the means employed by the state are rationally related to the purpose of the statutes.

*Kaltenbach v. Breaux*, 690 F. Supp. 1551, 1554-55 (W.D. La. 1988).

Furthermore, a sampling of decisions from other jurisdictions confirms that courts have reached the same conclusion with respect to laws in those states.  *See Halajian, supra* (California);

16

*Meisman v. Fremont Cnty., Colo.*, Civ. Action No. 11-2686, 2011 WL 5331694 (D. Colo. Nov.

7, 2011) (Colorado); and *Strong v. Municipality of Anchorage*, 2000 WL 34618646 (Alaska Ct.

App. Mar. 1, 2000) (Alaska).  The foregoing authority compels a finding of constitutionality

here.

      Insofar as plaintiff challenges Trooper Hanemann's specific actions, the court is required

to consider "whether the behavior of the governmental officer is so egregious, so outrageous, that

it may fairly be said to shock the contemporary conscience."  *Woodard v. Andrus*, 649 F. Supp.

2d 496, 504 (W.D. La. 2009) (citations omitted).  Accepting as true the allegations contained in

plaintiff's complaint (i.e., that plaintiff was driving with no visible license plate, no driver's

license, and no proof of insurance), the court finds that Trooper Hanemann's actions were

entirely appropriate, and his behavior did not transgress constitutional norms.

      To the extent that plaintiff complains that his car was towed without prior notice and

hearing, the Fifth Circuit has held, in the analogous context of illegally parked cars, that same is

not required.  *Breath v. Cronvich*, 729 F.2d 1006, 1010 (5th Cir. 1984) (citations omitted).

Indeed, the fundamental requirement of procedural due process is "the opportunity to be heard at

a meaningful time and in a meaningful manner."  *Id*. (citing *Mathews v. Eldridge,* 424 U.S. 319,

333, 96 S.Ct. 893, 902 (1976)).  A property interest may be deprived without opportunity for a

prior hearing when:

> (1) the deprivation is directly necessary to secure an important government or
> general public interest, (2) there is a special need for very prompt action, and (3)
> the person initiating the seizure has been a government official responsible for
> determining, under the standards of a narrowly drawn statute, that it was necessary
> and justified in the particular instance.

*Id*.

The foregoing requirements are satisfied in this case.  First, and as mentioned earlier, towing was necessary to ensure that an un-plated, uninsured, and therefore possibly dangerous vehicle was not operated on public streets.  Second, these same public safety concerns support the need for very prompt action.  *See Breath, supra*.  Third, Louisiana law requires a police officer to determine whether the proof of insurance law is being violated before the vehicle may be towed.  *See* La. R.S. § 32:863.1(C)(1)(a); *Breath, supra*.

Furthermore, Louisiana provides for post-impoundment notice and an opportunity for an administrative hearing.  *See* La. R.S. 32:863.1(C)(1)-(6) and 32:1727.[11]  If the owner is unable to demonstrate valid proof of insurance, then he will need to pay all associated costs and fees.  La. R.S. 32:863.1(C)(1)-(6).[12]

Finally, because the truck was lawfully towed from the scene at Trooper Hanemann's direction, the towing and ultimate disposition of the vehicle does not constitute a taking under the Takings Clause.  *Dudley v. Kansas City Police Dep't*, Civ. Action No. 13-0918, 2014 WL 1775959, at *3 (W.D. Mo. May 5, 2014) (citing *Bennis v. Michigan*, 516 U.S. 442, 452 (1996)).

In sum, the court finds that plaintiff's complaint fails to allege facts to support a finding that Trooper Hanemann violated any of his constitutional rights.  Accordingly, Hanemann is

---

[11]  The hearing is limited to review of whether the vehicle was covered by a valid insurance policy at the time of the alleged violation.  La. R.S. 32:863.1(C)(5)(a).

[12]  To the extent that plaintiff contends that he requested, but failed to receive a hearing, *see* Joint Status Report [doc. # 29], his complaint fails to state a claim for relief.  He concedes in his complaint that he was driving without insurance.  In addition, he did not allege that he has paid all associated towing and reinstatement charges and fees.  Other circuits have found no due process violation where authorities condition a hearing or release of a vehicle on the owner's payment of associated costs and fees.  *See Weinrauch v. Park City*, 751 F.2d 357, 360 (10th Cir. 1984) and *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1325 (9th Cir. 1982).

entitled to qualified immunity.  The court need not consider the second prong of the qualified immunity defense.[13]

e)    <u>Justice Wrecker</u>

Justice Wrecker did not join in the instant motion to dismiss.  Nonetheless, it alleged in its answer that the complaint failed to state a claim for relief.  (Answer Presenting Defenses Under Rule 12(b) [doc. # 20]).  Moreover, the court possesses the inherent authority to dismiss a party sua sponte.  *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also, Spann v. Woods*, 1995 WL 534901 (5th Cir. 1995) (unpubl.) (the district court sua sponte dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer); *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties).[14]  Also, where a defending party establishes that a plaintiff has no cause of action, this defense should inure to similarly situated defendants.  *See Lewis v. Lynn*  236 F.3d 766, 768, 236 F.3d 766 (5th Cir. 2001) (citations omitted).

Having determined that Trooper Hanemann did not violate plaintiff's constitutional rights by impounding plaintiff's vehicle, the same result necessarily obtains for Justice Wrecker which was effecting Hanemann's decision.  Indeed, without actionable conduct by Trooper Hanemann,

---

[13]  The qualified immunity defense only applies "as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity."  *Goodman v. Harris County*, 571 F.3d 388, 396 (5th Cir. 2009).

[14]  To the extent that the undersigned has expanded upon the grounds for dismissal urged by movants, the instant report and recommendation provides adequate notice to the parties.

there is no indication that Justice Wrecker could be considered a state actor under § 1983.

### Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that the motion to dismiss for lack of subject matter jurisdiction [doc. # 34] filed by defendants, Jason Hanemann and the State of Louisiana (named in the complaint as "Louisiana DMV"), be GRANTED, and that plaintiff's claims against the State of Louisiana, as well as his official capacity claims for compensatory damages against Trooper Hanemann be DISMISSED WITHOUT PREJUDICE.  Fed.R.Civ.P. 12(b)(1).

IT IS FURTHER RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 34] filed by defendant, Jason Hanemann, be GRANTED, and that plaintiff's individual capacity claims and his claims for injunctive relief against Jason Hanemann be DISMISSED WITH PREJUDICE.  Fed.R.Civ.P. 12(b)(6).

IT IS FURTHER RECOMMENDED that plaintiff's claims against defendant, Justice Wrecker, be DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 4th day of August 2015.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

21